UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

SPENCER JOHN PAYNE,

        Plaintiff,                   Case No. 2:24-cv-143

v.                                          Honorable Paul L. Maloney

MICHEALA SPIESSL et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues Corrections Officers Micheala Spiessl, Lance Ochampaugh, and Alexander Hammons in their personal capacities.

In his complaint, Plaintiff alleges that on March 23, 2024, between 3:00 p.m. and 4:00 p.m., there was a fire that caused an alarm to go off and Plaintiff began coughing and choking due to the black cloud of smoke that was entering his cell. Plaintiff noticed that his nose was bleeding. (ECF No. 1, PageID.2.) Plaintiff pressed his emergency light several times and other inmates were yelling for help and kicking on their doors. Plaintiff began to do the same. (*Id.*) Plaintiff then ran to his footlocker and got a t-shirt to cover his face and then hit his emergency light again several times. (*Id.*)

When Defendant Spiessl came into the unit and was trying to figure out where the smoke was coming from, Plaintiff asked her for help because he was having trouble breathing. Defendant Spiessl completely ignored Plaintiff. (*Id.*, PageID.3.) Defendant Ochampaugh then came into the unit and Plaintiff again asked for help. Defendant Ochampaugh told Plaintiff to "deal with it and stop crying." (*Id.*) shortly thereafter, Defendant Hammons came into the unit and also refused Plaintiff's request for assistance, saying that that he did not work on A wing. (*Id.*)

Plaintiff states that he continued to yell for help to Defendants as they walked from cell to cell, cleaning and vacuuming the vents. Defendants told everyone to "shut up and be patient." (*Id.*) Plaintiff again asked for medical attention and Defendants Hammons and Ochampaugh told him he would live and to write a medical kite. (*Id.*)

That night, Plaintiff wrote a grievance on Defendants for denying him medical attention. (*Id.*) On April 8, 2024, Plaintiff appealed the denial of his grievance to step II and on April 17, 2024, he filed a step III appeal. (*Id.*, PageID.4.)

Plaintiff states that Defendants violated his rights under the Eighth Amendment and seeks compensatory and punitive damages, costs, and declaratory relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants failed to heed his requests for medical assistance during the afternoon of March 23, 2024, when smoke was present in the unit and Plaintiff was allegedly having difficulty breathing. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v.*

4

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregard an excessive risk to inmate health and safety; the official must both be

5

> aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

In this case, the Defendants clearly knew there was a substantial risk to inmate health or safety: the fire. But it is not clear that Plaintiff's specific medical needs—or the medical needs of the other prisoners—were more urgent than addressing the fire which was the cause of all of the medical needs. Defendants certainly had reason to believe that the overarching risk posed by the fire was a greater priority than dealing with just Plaintiff's complaints regarding the smoke. Plaintiff alleges that he repeatedly yelled to Defendants that he needed help because he was having difficulty breathing due to smoke in the unit. Plaintiff states that while Defendants were attempting to discover the source of the smoke in the unit, and were cleaning the vents, they refused to get him medical attention. (ECF No. 1, PageID.2–3.) Plaintiff does not allege that Defendants "refused" to get him medical treatment at any times other than the times the Defendants were addressing the fire. Moreover, Plaintiff does not allege any facts indicating whether he submitted a medical kite following the incident, detailing any treatment he received, or whether he suffered any actual injuries as a result of Defendants' conduct. (*Id.*)

In this case, Plaintiff alleges facts showing that Defendants were aware of an obvious and serious risk to Plaintiff's health and safety. *Id.* The seriousness of Plaintiff's immediate need for medical treatment is not clear though. According to the allegations in Plaintiff's complaint, he repeatedly yelled at Defendants during the time they were attempting to address the problem of smoke in the unit. Plaintiff was not alone; he reports that "all the prisoners . . . asked for help and

6

medical attention." (Compl., ECF No. 1, PageID.3.) The fact that Plaintiff was repeatedly yelling would indicate to Defendants that he was able to breath, despite his statements to the contrary. And Plaintiff has failed to allege that he suffered any detrimental effects from the alleged delay in receiving medical care.

Nonetheless, Plaintiff offers the following allegations in support of his assertion that Defendants "acted with deliberate indifference," (*id.*, PageID.1):

"Spiessl disregarded the obvious danger and left the wing."

"Ochampaugh stopped and told the plaintiff deal with it and stop crying and walked off."

"[Plaintiff] was told by C/O Hammons that he couldn't give him any help or assistance at all because he do[esn't] work A wing and walked off."

"The defendants told everyone to shut up and be patient."

"Plaintiff Spencer Payne asked for medical attention again to C/Os Hammons and Ochampaugh and defendants stated you will live and to write a medical kite."

(*Id.*, PageID.3.) Standing alone, those factual allegations might lend some credence to Plaintiff's conclusion that Defendants were deliberately indifferent. But those allegations do not stand alone. Although these Defendants may not have been the persons who secured medical care for the prisoners, they were not idle. Plaintiff acknowledges that Defendants were "trying to figure out where the smoke was coming from and what or who was the cause." (*Id.*) Moreover, Plaintiff was not the only one who claimed to need help; "all the prisoners . . . asked for help and medical attention." (*Id.*) In that circumstance, Defendants' attempts to address the fire is a reasonable response to ***all*** of the prisoners' medical needs. Even after the fire was apparently out, Defendants continued their attempt to remedy the situation by "walk[ing] cell to cell cleaning and vac[u]uming the vents out in the closets to the cells one by one." (*Id.*)

7

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (quoting *Farmer*, 511 U.S. at 844) (internal quotation marks omitted). Here, Plaintiff's allegations that Defendants addressed the fire and its consequences to everyone's benefit, even if they did not immediately bring Plaintiff for medical treatment first, is plainly a reasonable response. Plaintiff's allegations, considered in the entirety, do not support his urged inference that Defendants were deliberately indifferent because they failed to respond to Plaintiff's shouts for medical assistance. Where Plaintiff's "own allegations suffice to show that the defendants did not disregard the risks," dismissal on screening for failure to state a claim is appropriate. *Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *3 (6th Cir. Oct. 14, 2021)

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   October 15, 2024                             /s/ Paul L. Maloney
                                                                            Paul L. Maloney
                                                                            United States District Judge